MAIN, Judge.
Lakisha Evett Jones was charged by seven separate indictments with seven counts of second-degree criminal possession of a forged instruments, i.e., counterfeit checks, violations of § 13A-9-6, Ala. Code 1975. Jones was convicted of two counts of second-degree criminal possession of a forged instrument. The jury acquitted Jones of five charges of second-degree criminal possession of a forged instrument. The trial court sentenced her to two years’ imprisonment on each of the two convictions and ordered Jones to pay restitution in the amount of $6,860 and other assessments, fines, and costs. Jones does not appeal the convictions for second-degree criminal possession of a forged instrument. She challenges the amount of restitution ordered.
The record discloses that Jones applied over the Internet for a job as a customer-service evaluator, and that she received a letter dated September 14, 2007, from Quality Consumer Research. In the letter, the company instructed Jones that she was to evaluate the customer service provided through Money Gram branches located in Wal-Mart stores in the area where she lived. In order to do this she would receive a cashier’s check, made payable to her, that she would need to cash. Once she cashed the check, she was to wire a specified amount of money from a Money Gram branch in a Wal-mart store to a specified recipient in Ontario, Canada, pay the service charge required by Money Gram, complete a form evaluating the customer service she had received, and keep a portion of the funds as her fee.
A cashier’s check made payable to Jones in the amount of $980 was enclosed in the September 14, 2007, letter. Pursuant to the instruction in the letter, Jones cashed the check on September 20, 2007, at Headland National Bank, where she had a savings account. She then went to the Money Gram branch at a Wal-Mart store, wired $840 to a designated recipient in Ontario, Canada, paid a service charge of $20, filled out a form evaluating the customer service at that particular Money Gram branch, and retained $120 as her fee.
Over the next several days, Jones received two more cashier’s checks for $980 each, made payable to her, which she cashed at Headland National Bank on September 24, 2007. She followed the same procedure pursuant to the instructions of the original letter. On September 26, 2007, and again on September 28, 2007, she received a total of four cashier’s checks for $980 each, made payable to her, which she cashed at Headland National Bank. All seven of the cashier’s checks were dishonored and returned, with a notation indicating that they were counterfeit.
The jury acquitted Jones of the charges on the first five checks totaling $4,900. The jury found Jones guilty of the charges related to the last two checks cashed totaling $1,960. At the sentencing hearing, after the trial court imposed Jones’s sentence, the State requested that the trial court order that Jones pay restitution in the amount of $6,860 to Headland National *38 Bank. Jones’s counsel argued that Jones should be required to pay restitution only for damage arising out of the two charges for which she was convicted, in the amount of $1,960, and that she should not be ordered to pay restitution for the five charges as to which the jury acquitted her. Over the objection of Jones’s counsel, the trial court ordered Jones to pay restitution to the Headland National Bank in the amount of $6,860, plus interest. The court set Jones’s probation hearing conditioned on Jones’s paying at least one-half of the restitution. Jones filed a motion to reconsider and for a hearing on the restitution amount. At the combined motion and probation hearing, the trial court denied Jones’s motion to reconsider the restitution order, granted probation, and ordered Jones to make restitution payments in the amount of $200 per month.[1]
On appeal, Jones argues that the trial court erred in ordering her to pay restitution on the five cheeks because the jury acquitted her as to the charges arising from those checks. Alternatively, she argues that she never admitted to any criminal activity or conduct. The State contends that Jones’s testimony that she cashed the counterfeit checks and that she had doubts about the checks after she cashed the first several checks amount to a judicial admission that she engaged in conduct that led to the bank’s loss of $4,900, the amount the bank paid on the first five checks and, thus, that the trial court did not err in ordering restitution in all seven cases. We agree with Jones that the trial court erred in awarding restitution on the five checks as to which she was acquitted. We reverse and remand.
“ ‘The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge.’ ” Ex parte Stutts, 897 So.2d 431, 433 (Ala.2004), quoting Clare v. State, 456 So.2d 355, 356 (Ala.Crim.App.1983), aff'd, 456 So.2d 357 (Ala.1984). Absent a clear abuse of discretion, we will not overturn a trial court’s restitution award. Stutts, 897 So.2d at 433.
According to § 15-18-65, Ala. Code 1975, perpetrators of criminal activity or conduct are “ ‘required to fully compensate all victims ... for any pecuniary loss, damage, or injury as a direct or indirect result thereof,’ ” when the “defendant’s criminal act was the proximate cause of the victim’s injury.... [and] ‘a reasonable person could have foreseen or anticipated that the injury might occur as a natural consequence of the action.’ ” Richardson v. State, 603 So.2d 1132, 1133 (Ala.Crim.App.1992). See also Rule 26.11(a), Ala.R.Crim.P. (“Restitution should be ordered in all cases where a victim has been injured or damaged.”); Best v. State, 895 So.2d 1050, 1054 (Ala.Crim.App.2004); Moore v. State, 706 So.2d 265, 267 (Ala.Crim.App.1996); Butler v. State, 608 So.2d 773, 775 (Ala.Crim.App.1992); Day v. State, 557 So.2d 1318, 1319 (Ala.Crim.App.1989); Strough v. State, 501 So.2d 488, 491 (Ala.Crim.App.1986).
“Under Alabama’s restitution statute, the defendant could be ordered to pay restitution to the victim of his crime only if one of two conditions existed: (1) his victim suffered direct or indirect pecuniary loss as a result of the criminal activity of which the defendant has been convicted, or (2) he admitted to other criminal conduct during the proceedings *39 that was the proximate cause of the victim’s pecuniary loss or damages.”
B.M.J. v. State, 952 So.2d 1174, 1176 (Ala. Crim.App.2006). See also Lamar v. State, 803 So.2d 576 (Ala.Crim.App.2001). Further, as this Court stated in Grace v. State, 899 So.2d 302, 308 (Ala.Crim.App.2004), in addressing Alabama’s Restitution Act:
“ ‘ “ ‘[I]t is well established that criminal statutes should not be “extended by construction.” ’ Ex parte Evers, 434 So.2d 813, 817 (Ala.1983). “‘[C]riminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.” ’ United, States v. Bridges, 493 F.2d 918, 922 (5th Cir.1974).” Carroll [v. State ], 599 So.2d [1253] at 1264 [ (Ala.Crim.App.1992) ].’ ”
Section 15-18-66(1), Ala.Code 1975, defines “criminal activity” as “[a]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.” An “admission” under § 15-18-66 requires a “judicial admission sufficient to support a conviction before restitution can be ordered.” Day, 557 So.2d at 1319. See Best, supra. Alabama courts have followed and applied Professor Wigmore’s definition of judicial admissions in addressing proof of prior convictions at sentencing, as follows:
“Wigmore defines a judicial admission as:
“ ‘an express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact_ This is what is commonly termed a solemn — i.e., ceremonial or formal — or judicial admission or stipulation. It is, in truth, a substitute for evidence, in that it does away with the need for evidence.’
“.... 9 Wigmore, Evidence § 2588 at 821-22 (Chadbourn rev. 1981).”
Webb v. State, 539 So.2d 343, 352 (Ala.Crim.App.1987).
In Lamar, supra, this Court reversed the trial court’s restitution award of $25,000 to Rosalyn Sellers and her son for injuries they had sustained in an automobile accident. Lamar had entered a guilty plea to the offense of leaving the scene of an accident, a violation of § 32-10-1, Ala. Code 1975, and he argued on appeal that “the circuit court improperly ordered him to pay restitution because, he argue[d], the injuries the victims sustained were not ‘proximately caused’ by his leaving the scene.” Lamar, 803 So.2d at 577. In our opinion reversing the trial court’s restitution award, this Court stated:
“Lamar’s plea of guilty to the offense defined in §§ 32-10-1 and 32-10-2[, Ala. Code 1975,] did not result in a conviction for causing the accident that resulted in the injuries to Sellers and her son, and, therefore, his guilty plea could not authorize the trial court to sentence him to pay restitution for injuries sustained as a result of the accident.
[[Image here]]
“The trial court could also have ordered Lamar to pay restitution for ‘any other criminal conduct’ he admitted during these proceedings that was the proximate cause of the victims’ injuries. See § 15-18-66[, Ala.Code 1975]. However, at no point during the plea colloquy, the sentencing hearing, or the restitution hearing did Lamar ever admit to having caused the accident resulting in the victims’ injuries. Although evidence was presented during both the sentencing and restitution hearings that Lamar had caused the accident because he was speeding and he struck a turning vehicle, Lamar himself never made such an admission. Under the plain language of § 15-18-66, restitution can be ordered only for ‘other criminal conduct’ that is admitted by the defendant. This court has previously held that an admission, as *40 defined in § 15-18-66, requires ‘a judicial admission sufficient to support a conviction before restitution can be ordered.’ Day v. State, [557 So.2d 1318, 1319 (Ala.Crim.App.1989) ]. Therefore, the trial court had no statutory authorization to order Lamar to pay restitution to Sellers and her son for the injuries they sustained during the accident, because Lamar never admitted any conduct that could be said to be the proximate cause of their injuries.”
Lamar, 803 So.2d at 578-79 (footnote omitted). See also Best, supra (holding restitution order improper where there was evidence that victim suffered pecuniary loss indirectly in connection with defendant’s criminal activity, absent proof that defendant had stolen the personal property or had possession of it); Brothers v. State, 531 So.2d 317 (Ala.Crim.App.1988) (concluding that, where defendant pleaded guilty to first-degree theft of property and third-degree burglary and was ordered to pay restitution for damage to property destroyed in a fire resulting from arson, the burning of the house was neither direct nor indirect result of theft or burglary). Cf. Ex paiie Clare, 456 So.2d 357 (Ala.1984) (upholding restitution order where defendant admitted embezzling moneys in an amount greater than that stated in the indictment); Moore v. State, 706 So.2d 265 (Ala.Crim.App.1996) (upholding restitution order where defendant agreed pursuant to plea bargain to compensate all victims of his theft); Pollard v. State, 593 So.2d 95 (Ala.Crim.App.1991) (upholding restitution order where defendant pleaded guilty to possession of a forged instrument and admitted conduct during sentencing hearing).
In this case, Jones was charged by seven separate indictments with second-degree criminal possession of a forged instrument. Section 13A-9-6(a), Ala.Code 1975, provides: “A person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument of a kind specified in Section 13A-9-3 with knowledge that it is forged and with intent to defraud.” All seven charges were submitted to the jury. However, the jury found Jones guilty of only two counts of second-degree criminal possession of a forged instrument and acquitted her of the remaining five. Because Jones was acquitted on the first five charges, there is no conviction of criminal activity relative to those charges and checks, and Jones cannot be ordered to pay restitution on those charges under the threshold definition of “criminal activity” in § 15-18-66(1), Ala. Code.1975. Further, no evidence exists in the record supporting a judicial admission by Jones to criminal conduct related to those five checks, and Jones cannot be ordered to make restitution under the alternative definition in § 15-18-66(1), Ala. Code.1975, i.e., “criminal conduct admitted by” Jones. Although there was some evidence in the record tending to show that Jones had some misgivings after cashing several of the checks, we do not consider this to be the type of admission contemplated by § 15-18-66(1), Ala.Code.1975, or Day, supra, or Webb, supra. Therefore, Jones can be ordered to pay restitution only on the two counterfeit checks totaling $1,960 for which she was convicted. Accordingly, the trial court improperly ordered Jones to pay restitution in the amount of $6,860 on all seven of the counterfeit cheeks. Consequently, the trial court’s restitution award is reversed, and the cause is remanded for the trial court to amend its judgment accordingly.
REVERSED AND REMANDED.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.

. The transcript of the combined hearing on Jones's motion to reconsider and probation is not included in the record on appeal.